UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

v.

JAMES P. HOWARD,

    Defendant/Movant.

No. 2:15-CR-22-DLB-HAI-3

RECOMMENDED DISPOSITION
& ORDER

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In August 2017, Defendant James P. Howard filed a *pro se* motion to vacate his sentence under 28 U.S.C. § 2255. D.E. 124. The motion raises a single issue—whether Howard timely instructed his retained trial attorney to file a notice of appeal.[1] It is undisputed that Howard signed the Court's form that alerted him to the fourteen-day deadline. D.E. 108. It is also undisputed that Howard's trial attorney sent him a post-sentencing letter that referenced the deadline, but that this letter got "lost in the mail," and did not arrive until after the appeal deadline passed. D.E. 111 at 4 (describing the issue as a "mailing error"); D.E. 111-1 (letter); D.E. 124-2 at 4 (Howard's brief); D.E. 132-1 at 2 (attorney's affidavit, explaining that the letter was returned and re-mailed). The key disputed fact is whether Howard, as he claims, asked his attorney immediately after sentencing to file an appeal. *See* D.E. 124 at 7; D.E. 124-3; D.E. 132-1. To address this factual dispute, the undersigned conducted an evidentiary hearing on February

---

[1] Howard raises other issues in his reply brief. D.E. 137. However, his § 2255 motion and memorandum clearly raise only a single claim—his attorney's failure to appeal when instructed to do so. D.E. 124. Claims raised for the first time in a reply brief are waived. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *United States v. Griffie*, No. 7:08-CR-29-ART, 2011 WL 3849634, at \*4 (E.D. Ky. Aug. 29, 2011).

13, 2018, in Lexington.  D.E. 143.  The Court appointed Christy Love to represent Howard at the hearing.  D.E. 140.  Howard and his retained trial attorney Deanna Dennison testified.  D.E. 143, 144.

## LEGAL STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

The Court recognizes that Howard is proceeding *pro se*, without the assistance of an attorney.  The Court construes *pro se* motions more leniently than other motions.  *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).  A document filed *pro se* is to be liberally construed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The law is clear that "the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment."  *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998).  Failing to file a notice of appeal when a defendant requests one satisfies both prongs of the ineffective-assistance-of-counsel test of *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Campbell*, 686 F.3d at 357 (discussing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)).  In such cases, prejudice is presumed.  *Ludwig*, 162 F.3d at 459.  It is inappropriate to inquire whether

any appeal would be successful. *Peguero v. United States*, 526 U.S. 23, 28 (1999). The remedy for this type of *Strickland* violation is a delayed appeal. *Campbell*, 686 F.3d at 360.

## BACKGROUND AND MOTION

Howard was sentenced on August 18, 2016, after pleading guilty to aiding and abetting the distribution of heroin. D.E. 109. His plea agreement contains the following waiver provision, which includes handwritten additions indicated by brackets:

> The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal the length of his term of imprisonment if it exceeds 151 months [and/or career offender designation and any other revisions to criminal Guidelines that may affect the {Defendant} in the future.] Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

D.E. 91 at 3 ¶ 8.

Howard was sentenced to 120 months of incarceration (D.E. 109 at 2), well below his Guidelines Range of 188 to 235 months (D.E. 115 at 15). He was designated a career offender under the Guidelines. D.E. 115 at 4, 6, 10, 24-25. On the date of his sentencing, Howard signed the Advice of Right to Appeal form, which notified him that any notice of appeal was due within 14 days. D.E. 108.

On November 14, 2016, Howard filed a *pro se* motion to reopen his appeal period. D.E. 111. He stated that, although his attorney sent him a letter notifying him of his 14-day window to file his appeal (which letter is filed at Docket Entry 111-1), due to mailing errors, Howard did not receive the letter until November 3, 2016, well after that deadline had passed. *Id*. at 2. District Judge Thapar denied the motion on the basis that Howard understood the deadline regardless of whether his attorney's letter arrived late. D.E. 112. Howard filed a notice to appeal that order, but the Sixth Circuit dismissed the appeal for lack of prosecution. D.E. 121.

3

This § 2255 motion to vacate followed (D.E. 124), and the case was reassigned to District Judge Bunning (D.E. 122). In his § 2255 motion, Howard raises one claim. He argues, "[after sentencing], I instructed my attorney to file a notice of appeal of my sentence because I received more time than my co-defendants. However, she failed to do so." D.E. 124 at 7; *accord* D.E. 124-3 at 2. Howard seeks a delayed appeal. D.E. 124 at 22.

In his earlier motion for a delayed appeal, Howard made the sworn statement that he "would have instructed [his attorney] to file a notice of appeal" if he had received her letter in time. D.E. 111 at 4. In its response brief, the government argues that Howard's § 2255 claim is not credible because he previously said he "would have" asked for an appeal. D.E. 132. The government further argues that other post-sentencing correspondence between Howard and his lawyer never mentions an appeal. *Id*. The attorney states in an affidavit that she has no recollection of Howard asking for an appeal, but that she would have filed one if he had asked. D.E. 132-1 at 3.

> Howard also filed an affidavit, which includes the following factual allegation:
>
> After sentencing, Mr[.] Howard was displeased with the sentence and *stated to his former counsel Deanna L Dennison that he wanted to file a notice of appeal* because he received more pris[on] time than his co-defendants and that he was not a career offender because his prior crimes were low level drug offenses and could not be used to make him a career offender.

D.E. 124-3 at 2 (emphasis added). Thus, at the end of briefing, the Court was faced with multiple sworn statements from Howard that he had requested an appeal, a countervailing statement from counsel that she did not recall such a request, and a sworn statement from a previous motion that Howard "would have" sought an appeal had he timely received the post-sentencing letter from his attorney.

**HEARING TESTIMONY**

The testimony at the evidentiary hearing did not provide a clear resolution to the factual dispute. When asked on direct examination whether he had instructed his attorney to file a notice of appeal, Howard replied, "Yes." D.E. 145 at 6, 7. He explained that, while in the courtroom at the end of his sentencing hearing, he and his attorney "had time to talk." *Id*. at 7.

> And I told her that I didn't feel—I didn't like it, I wanted to appeal it. But she was actually saying that she didn't think it was a good idea because I got under my guideline. But I told her I wasn't hearing that, I wanted to appeal because there ain't no way I should have got more time than my codefendant. I never did touch any drugs or nothing.

*Id*.

Howard testified that he first discovered that no appeal had been filed at the "end of October" 2016. D.E. 145 at 9. He received a letter from his attorney that "was just explaining about my appeal rights . . . it threw me off because I'm thinking all this time that she had already went through the process." *Id*. Just before this, Howard had sent his lawyer a letter regarding a pending detainer. *Id*. He testified that he did not reference the appeal in that letter because he "figured she was already going through the process." *Id*. Counsel's failure to file the appeal was unexpected because "any time I've actually wanted anything, she always did it." *Id*. at 8.

Howard addressed the statement he made in his motion to reopen the appeal period that he "would have" instructed his attorney to appeal had her letter arrived in time. *See* D.E. 111 at 4. He explained that, had he gotten the letter in time, "I would have told her once again, I wanted to file the appeal." D.E. 145 at 11. He theorized that perhaps "she really didn't do it because . . . I ran out of money to pay her." *Id*. Howard reiterated that he "definitely told her at the sentencing" to file an appeal and "would have told her again," had he gotten the letter. *Id*. at 12. "I would have jumped on it right again," he testified. *Id*. "I asked her at sentencing . . . if I

5

got the letter on time, I would have told her again." *Id*. at 17. "If I would have got the letter, I would have told her again I want to file an appeal." *Id*. at 18. Howard's "meaning of what I wrote is if I would have received the letter that let me know that she never filed the appeal, I definitely would have instructed her to file it again." *Id*. at 22.

Howard specified that he wanted to appeal his career offender status and challenge the 21 U.S.C. § 851 notice, although he acknowledged that he did not say anything about the § 851 notice on the date of sentencing. D.E. 145 at 22. He stressed that he felt it unfair that he received a lengthier sentence than "the leader" in the case. *Id*. at 23. That is why, he said, he asked his attorney to appeal "my career offender and about me getting more time than my codefendant." *Id*. Howard's testimony was consistent with his § 2255 motion and affidavit.

Ms. Dennison's testimony was also consistent with her affidavit. She testified that she "would file an appeal" if a client asked her to. D.E. 145 at 30. It would not have mattered if the client owed money or could not afford to pay for the appeal: "People owe me money all the time. I would never not do that over money. They have a right to do that." *Id*. She testified,

> I do not recall him asking me ever. I feel badly about it. . . . Because if he asked me and I didn't hear him, that's the only thing I worry about. But if someone had asked me to do an appeal, I would do an appeal. I would file my notice. There's no reason why I would not.

*Id*. at 31.

Ms. Dennison did say it was "absolutely not true" that she and Howard had time at sentencing to discuss the issues he could appeal. D.E. 145 at 31. "You don't get to chitchat" with a defendant right after sentencing. *Id*. "They take them away and that's it." *Id*. "There's no way," she said, "that he would name those specific things to me." *Id*. at 31-32. But, "If he had asked me to file an appeal and I had heard it, I'm telling you, I would have filed an appeal." *Id*. at 32. Ms. Dennison repeated that there was "no way" Howard engaged in a "specific

6

discussion" about "the different issues that should be raised on appeal." *Id*. She also testified that, had Howard told her to appeal, she would not have then sent him a letter advising him of his right to appeal. *Id*. at 33. She testified that she had no notes regarding whether Howard asked her to appeal, nor would she have documented such a request—"I would have done it. I wouldn't have had to write it down." *Id*. at 35.

## ANALYSIS & CONCLUSION

The question is whether Howard has proven his allegation by a preponderance of the evidence. *Williams v. United States*, 632 F. App'x 816, 821 (6th Cir. 2015). Based on the available evidence, is it more likely than not that he asked his attorney to file a notice of appeal at the end of his sentencing hearing? Howard's testimony was specific, consistent with his filings, and only flatly contradicted Ms. Dennison's testimony on one point. Ms. Dennison's testimony, by contrast, left open the possibility that Howard could have asked to appeal, but she failed to hear or understand. Ms. Dennison is a competent and skilled lawyer, and her testimony was forceful and professional. However, under these circumstances, Howard has met his burden.

Two circumstances weigh against finding Howard to be a credible witness. The first circumstance affects every habeas petitioner, and that is the fact that a petitioner stands to benefit from misleading the Court. Every petitioner has the incentive to manufacture facts in his favor.

The second circumstance that weighs against Howard is the fact that he and Ms. Dennison flatly disagreed as to whether Howard had time, at the end of his sentencing hearing, to discuss the specific issues he believed would have merit on appeal. Howard testified that he and his attorney "had time to talk" after he was sentenced. D.E. 145 at 7. He said he told her it was unfair that he received a longer sentence this his codefendant. Her response, according to

7

Howard, was that an appeal was not "a good idea" because his sentence was below-Guidelines." *Id*.

Ms. Dennison described this part of Howard's testimony as "absolutely not true." D.E. 145 at 31. "There's no way," she said, "that he would name those specific things to me." *Id*. at 31-32. "You don't get to chitchat" at the end of a sentencing hearing because the Marshals immediately remove the defendant from the courtroom. *Id*. at 31. This aspect of the hearing testimony cannot be reconciled. The conflicting testimony leaves open the possibility that Howard briefly asked Ms. Dennison to appeal (perhaps even mentioning the sentencing disparity with his codefendant), but she failed to hear the request.

Otherwise, Howard's testimony was consistent and credible. It is reasonable to believe that Howard was focused on his appellate rights at sentencing, particularly when the parties made a handwritten addition to the appeal waiver provision of the plea agreement. D.E. 91 at 3. That handwritten addition, initialed by Howard, Dennison, and the prosecutor, preserved his right to appeal his career offender designation and "any other revisions to criminal Guidelines that may affect the [defendant] in the future." *Id*. The fact that the parties haggled over the appeal waiver lends credence to Howard's claim that he was interested in filing an appeal.

Additionally, Ms. Dennison "distinctly recalls Mr. Howard being upset at sentencing." D.E. 132-1 at 1. She wonders whether Howard was "even listening" when Judge Thapar explained his appeal rights "because he was so focused on what he felt was a sentence that was too high." *Id*. The fact that Howard was visibly distressed about his sentence lends additional credence to his stated interest in filing a notice of appeal.

Howard's recollection of Ms. Dennison's response is also credible—assuming there was adequate time for such a conversation to take place. According to Howard, she told him that an

appeal would not be "a good idea" because his sentence was below his Guidelines Range. D.E. 145 at 7. This is a plausible response because, aside from the handwritten addition to the appellate waiver, Howard retained the ability to appeal only a sentence that exceeded 151 months. D.E. 91 at 3. Howard's actual sentence of imprisonment was 120 months. D.E. 109 at 2. Also, in the appeal-notice letter, Ms. Dennison stated, "my opinion is you have no basis for an appeal" because Howard received an "unheard of" variance below the Guidelines Range of 188 to 235 months and the government's requested sentence of 151 months. D.E. 132-1 at 5.

Howard also effectively explained the language he used in the motion to reopen the appeal period. D.E. 111. He states in that motion that, had he received Ms. Dennison's appeal-rights letter in time, "he would have instructed her to file a notice of appeal." *Id*. at 4. Howard explained at the hearing that he meant he would have asked Ms. Dennison *a second time* to file a notice of appeal. D.E. 145 at 11-12, 17-18. Nothing in his motion to reopen the appeal period plainly contradicts Howard's testimony that, until the day he received the appeal-rights letter, he believed that his lawyer had appealed. Further, Howard explained that he made no mention of an appeal in his October letter to his attorney (D.E. 132-1 at 12) because he already assumed the appeal was in process. D.E. 145 at 9. And he sent that letter (pertaining to a detainer) before he received the appeal-rights letter. *Id*.

In contrast to Howard's clear picture of what happened, Ms. Dennison testified she did "not recall" him asking for an appeal. D.E. 145 at 31. She "feel[s] badly" about the situation because she "worr[ies]" that perhaps "he asked me and I didn't hear him." *Id*. "Could I have not heard him," she wondered aloud. *Id*. at 32. However, she believed she "would have remembered him saying all those specific things if he did, but he did not." *Id*. Similarly, Ms. Dennison stated in her affidavit that it was "entirely possible [she] did not hear the Defendant or

9

missed the Defendant for some reason asking her to file an appeal[.]" D.E. 132-1 at 3. This testimony is admirably candid and bolsters Ms. Dennison's overall credibility. However, it falls short of actually contradicting Howard's core testimony that he did ask his attorney to appeal his sentence.

Accordingly, the balance of the evidence tips in favor of finding that Howard, at the end of his sentencing hearing, asked his attorney to file a notice of appeal. Howard's counsel's failure to file a requested appeal constitutes *per se* ineffectiveness, entitling Howard to relief regardless of the appeal waiver in the plea agreement. *United States v. Campbell*, 686 F.3d 353, 360 (6th Cir. 2012). The undersigned therefore **RECOMMENDS** that Howard's § 2255 motion be **GRANTED.** The District Court should then vacate his sentence and re-impose the same sentence, permitting Howard to file an appeal. *See United States v. Jackson*, No. 5:14-CR-83-DCR-03, 2016 WL 2731678, at *3 (E.D. Ky. May 10, 2016). The effect of Howard's appellate waiver would be litigated at that point.

It is also **ORDERED THAT** Christy Love's representation of Howard shall extend to the completion of the objections period.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 23rd day of February, 2018.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge

11